**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re:<br><br>LAKESIDE 370 LEVEE DISTRICT<br><br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | In Proceedings Under Chapter 9<br>Hon. Kathy A. Surratt-States<br><br>Case No.  14-46094-659 |

_____

**PLAN OF ADJUSTMENT - LAKESIDE 370 LEVEE DISTRICT**
**(Dated December 15, 2014)**

_____

Debtor Lakeside 370 Levee District (hereinafter "Debtor") hereby proposes this Plan of Adjustment (the "Plan") pursuant to Section 941 of the Bankruptcy Code (defined below).  This Plan provides for the Debtor's future revenues to be distributed to its creditors in accordance with the priorities established by the Bankruptcy Code and the provisions of this Plan.   References made to the Disclosure Statement refer to that written Disclosure Statement Dated December 15, 2014, as approved by the Bankruptcy Court on or about _____  __, 201__ which provides a summary and analysis of this Plan.

**ARTICLE ONE**
**Definitions**

Capitalized terms used in this Plan, unless otherwise defined herein, shall have the meanings or rules of construction assigned to each under the Bankruptcy Code.  In construing the defined term or terms used in the Plan, (i) the singular shall include the plural and the plural shall include the singular, (ii) the conjunctive shall include the disjunctive and the disjunctive shall include the conjunctive, and (iii) reference to any gender shall include any other gender as appropriate.  Unless

1

the context otherwise requires, the following terms used herein shall have the following meanings:

1.1. **Allowed Administrative Expense Claim** shall mean an Allowed Claim arising from costs or expenses of administration of the Debtor's Property allowed under Section 503(b) of the Bankruptcy Code.

1.2   **Allowed Claim** shall mean any Claim in the amount and the priority classification set forth in any proof of Claim that has been timely filed in this case, or in the absence of such proof, as set forth in the Debtor's List of Creditors, filed in the Case on August 1, 2014, unless: (i) the Claim has been objected to or is objected to after entry of the Confirmation Order, in which case such Claim shall be allowed only in an amount and classification as determined by a Final Order of the Bankruptcy Court; or (ii) the Claim has been paid in full, withdrawn or otherwise deemed satisfied in full.  An Allowed Claim shall not include unmatured interest or any other cost or expense which accrues after the Petition Date unless otherwise stated in the Plan.

1.3   **Allowed Secured Claims** shall mean the Allowed Claims, if any, which are secured by Debtor's Estate, but only to the extent of the value of such Debtor's Property.

1.4   **Allowed Unsecured Priority Claim** shall mean an Allowed Claim which is unsecured and which is entitled to priority under Section 507(a) of the Bankruptcy Code.

1.5   **Allowed General Unsecured Claim** shall mean an Allowed Claim that is not entitled to priority under Section 507(a) of the Bankruptcy Code or otherwise; or as to which the claimant does not have a validly perfected, enforceable lien or security interest as defined in Sections 101(37), (49), (50) and (51) of the Bankruptcy Code; or an Allowed Claim arising from the rejection of an unexpired lease or executory contract; or an Allowed  Claim of Holders of Lakeside 370 Levee District Improvement Bonds, Series 2008.

1.6   **Allowed Claims of Holders of Lakeside 370 Levee District Improvement Bonds, Series 2008** shall mean an Allowed Claim which arises from Creditor's ownership of a Lakeside 370 Levee District Improvement Bonds, Series 2008.

1.7   **Bankruptcy Code** shall mean Title 11 of the United States Code, 11 U.S.C. Section 101, et. seq., as amended.

2

1.8   **Bankruptcy Court** shall mean the United States Bankruptcy Court for the Eastern District of Missouri, Eastern Division, in which the Debtor's Chapter 9 Case is pending.

1.9   **Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure adopted by the Supreme Court of the United States, as amended from time to time.

1.10   **Benefitted Parties** shall mean any Person subject to District Assessments, whether levied to satisfy a maintenance budget or levied to satisfy installment payments (Debt Service).

1.11   **Board of Supervisors** shall mean the persons who operate the business affairs of the Debtor and who are elected in accordance with state law.

1.12   **Case** shall mean the Chapter 9 bankruptcy proceedings entitled In re: Lakeside 370 Levee District, which proceedings are currently pending before the Bankruptcy Court as Case No. 14-46094-659.

1.13   **Cash** shall mean currency, check, draft, wire transfer and other similar forms of payment.

1.14   **Chapter 9** shall mean Chapter 9 of the Bankruptcy Code.

1.15   **Claim** shall mean any right to payment or right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from Debtor on or as of the Petition Date, whether or not such right is reduced to judgment, liquidated, fixed, contingent, undisputed, legal, equitable, secured or unsecured.

1.16   **Confirmation Date** shall mean the date on which the Confirmation Order is entered by the Clerk of the Bankruptcy Court in the docket for the Case.

1.17   **Confirmation Order** shall mean the Final Order entered by the Bankruptcy Court confirming the Plan pursuant to Section 943 of the Bankruptcy Code.

1.18   **Creditor** shall mean any Person that holds an Allowed Claim.

1.19   **Debt Service** shall mean funds assessed, collected or distributed to owners of bonds issued by the District, the Lakeside 370 Levee District - Subdistrict A or the Lakeside 370 Levee District - Subdistrict B.

3

1.20  **Debtor** shall mean Lakeside 370 Levee District, a public corporation of the State of Missouri, duly created, organized and existing under and by virtue of the Constitution and laws of the State of Missouri, including Sections 245.010 to 245.280 of the Revised Statutes of Missouri, as amended.

1.21  **Debtor's Property** shall mean all of the Debtor's property, including all property in which the Debtor has an interest, as defined in Section 541(a) of the Bankruptcy Code and also includes the proceeds of any causes of action brought by Debtor or on behalf of the Debtor.

1.22  **Disclosure Statement** shall mean the written Disclosure Statement submitted by the Debtor contemporaneously herewith concerning the Plan and as approved by the Bankruptcy Court pursuant to Sections 901 and 1125(b) of the Bankruptcy Code, as amended from time to time.

1.23  **Disputed Claim** shall mean a Claim against the Debtor or against the Debtor that is not an Allowed Claim and as to which there is no Final Order disallowing such Claim.

1.24  **Distribution** shall mean the Cash distributed under the Plan from time to time.

1.25  **District** shall mean Lakeside 370 Levee District, a public corporation of the State of Missouri, duly created, organized and existing under and by virtue of the Constitution and laws of the State of Missouri, including Sections 245.010 to 245.280 of the Revised Statutes of Missouri, as amended, and as reorganized upon confirmation of the Plan.

1.26  **District Assessments** shall mean the levies, charges, and assessments that Debtor has or will levy pursuant to Mo. Rev. Stat. Chapters 245 and 246 and this Plan upon the Benefitted Parties within the District.

1.27  **District Land** shall mean the real estate located within the legal boundary of the Lakeside 370 Levee District, whether owned by Debtor or by others.

1.28  **District Owned Acreage** shall mean that portion of the District Land that is owned by Debtor.

1.29  **District Owned Developable Acreage** shall mean that portion of the District Owned Acreage that is being offered for sale by the Debtor.

4

1.30  **Effective Date** shall mean the first business day following the occurrence of both: a) the day the Order of the Bankruptcy Court confirming the Plan becomes a Final Order; and b) the exchange of the Lakeside 370 Levee District Improvement Bonds, Series 2008 for the bonds to be issued pursuant to this Plan of Adjustment.

1.31  **Final Order** shall mean an order or judgment of the Bankruptcy Court, as entered by the Clerk of the Bankruptcy Court on the docket related to the Case, as to which: (i) the time for appeal or petition for review has expired, and no appeal or petition for review is pending or was timely filed; or (ii) any and all appeal(s) or petition(s) for review have been finally determined or dismissed.

1.32  **Holder or holder** shall mean with respect to the beneficial owner of any bonds described in this Plan, the beneficial owner of any Lakeside 370 Levee District Improvement Bonds, Series 2008, any Lakeside 370 Levee District Subdistrict A Bond or any Lakeside 370 Levee District Subdistrict B Bond, as the case may be.

1.33  **Lakeside 370 Levee District Improvement Bonds, Series 2008** shall mean the District's issued and outstanding Lakeside 370 Levee District Improvement Bonds, Series 2008.

1.34  **Lakeside 370 Levee District – Subdistrict A** shall mean that district formed pursuant to the decree entered by the Circuit Court of St. Charles County in case number 1411-CC00998 and containing the boundaries and land described in said decree.

1.35  **Lakeside 370 Levee District – Subdistrict B** shall mean that district formed pursuant to the decree entered by the Circuit Court of St. Charles County in case number 1411-CC00999 and containing the boundaries and land described in said decree.

1.36  **Paying Agent** shall mean UMB Bank, N.A., Kansas City, Missouri, and any successors or assigns.

1.37  **Petition Date** shall mean August 1, 2014, the date Debtor filed a voluntary petition for relief under Chapter 9 of the Bankruptcy Code.

1.38  **Person** shall mean an individual, corporation, partnership, joint venture, trust, estate and/or an incorporated association.

5

1.39 **Plan** shall mean this Chapter 9 Plan of Adjustment, in its present form and as it may be further amended or modified from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the provisions contained therein.

1.40 **Plan Proponent** shall mean the Debtor.

1.41 **Pro Rata** shall mean the same proportion that an Allowed Claim in a particular class bears to the aggregate amount of all Allowed Claims in such class. To the extent that Disputed Claims exist in a class, until all such Disputed Claims shall, in whole or in part, have become Allowed Claims, Pro Rata shall mean the same proportion that an Allowed Claim in a particular class bears to the aggregate amount of all Allowed Claims and Disputed Claims in such class.

1.42 **Record Date** for the determination of the holder of Lakeside 370 Levee District Improvement Bonds, Series 2008, Lakeside 370 Subdistrict A Bonds, or Lakeside 370 Subdistrict B Bonds shall mean the holder as of the 15th day (whether or not a business day) of the calendar month next preceding the date for payment or distribution of property on account of such bonds.

1.43 **Reserve for Maintenance Obligations**.  So long as any District Owned Developable Acreage remains, upon the Effective Date or as soon thereafter as District resources permit, the District shall establish a Reserve for Maintenance Obligations in such amount as the Board of Supervisors deems prudent not to exceed $600,000 in the aggregate.  The proceeds of the Reserve for Maintenance Obligations shall be used to fund the Lakeside 370 Levee Subdistrict B's pro rata share of the District's annual maintenance costs attributable solely to District Owned Developable Acreage, as more fully set forth within this Plan and the Subdistrict Cooperation Agreement.

1.44 **Schedules** shall mean the list of creditors filed by Debtor pursuant to Section 924 of the Bankruptcy Code and applicable provisions of the Federal Rules of Bankruptcy Procedure, including all amendments and supplements thereto as of the Confirmation Date.

1.45 **Secured Claim** shall mean all Allowed Claims secured by a valid, enforceable and properly perfected lien, encumbrance, security interest, or other charge against, or interest in, Debtor's Property, in an amount which is not in excess of the value of Debtor's Property subject to such Claim and only to the extent of the value of the lien, encumbrance or security interest of the holder of such Allowed Claim in such Debtor's Property, determined in accordance with Section 506 of the Bankruptcy Code.  To the extent the amount of an Allowed Claim exceeds the

value of the Debtor's interest in said property subject to such Claim, such Allowed Claim shall be treated as an Allowed Unsecured Claim in accordance with Section 506 of the Bankruptcy Code.

1.46  **Secured Creditors** shall mean all Creditors which, as of the Petition Date, held Allowed Secured Claims.

1.47  **Series A Bond Indebtedness** shall mean the obligations of Lakeside 370 Levee District – Subdistrict A relative to the restructured bonds issued by Lakeside 370 Levee District – Subdistrict A pursuant to the provisions of this Plan.

1.48  **Series B Bond Indebtedness** shall mean the obligations of Lakeside 370 Levee District – Subdistrict B relative to the restructured bonds issued by Lakeside 370 Levee District –Subdistrict B pursuant to the provisions of this Plan.

149.  **Series A Bonds or Lakeside 370 Levee District Subdistrict A Bonds** shall mean the bonds issued by Lakeside 370 Levee District – Subdistrict A pursuant to the provisions of the Plan.

150.  **Series B Bonds or Lakeside 370 Levee District Subdistrict B Bonds** shall mean the bonds issued by Lakeside 370 Levee District – Subdistrict B pursuant to the provisions of the Plan.

151.  **Subdistrict Bonds** shall mean the Series A Bonds or the Series B Bonds, as the case may be.

1.52  **Subdistrict Cooperation Agreement** shall mean that certain Subdistrict Cooperation Agreement among the Debtor, Lakeside 370 Levee District - Subdistrict A and Lakeside 370 Levee District - Subdistrict B.


## ARTICLE TWO
### Classification of Allowed Claims and Allowed Interests

2.1  **Inclusion in Classes.**  All Allowed Claims other than Allowed Administrative Expense Claims, which Allowed Administrative Expense Claims are not classified in accordance with Section 1123(a)(1) of the Bankruptcy Code, are placed in the classes described in this Article Two of the Plan.

2.2  **Class 1 Allowed Secured Claims.**  Class 1 shall consist of all Allowed Secured Claims, if any.

7

2.3    **Class 2 Allowed Unsecured Priority Claims.**    Class 2 shall consist of all Allowed Unsecured Priority Claims.

2.4    **Class 3 Allowed General Unsecured Claims.**    Class 3 shall consist of all Allowed General Unsecured Claims.

2.5    **Class 4 Allowed Claims of Holders of Lakeside 370 Levee District Improvement Bonds, Series 2008.**    Class 4 shall consist of all Allowed Claims of Holders of Lakeside 370 Levee District Improvement Bonds, Series 2008.

### ARTICLE THREE
### Treatment of Claims and Classes

3.1    **Allowed Administrative Expense Claims**.    Each holder of an Allowed Administrative Expense Claim, if not previously paid in full pursuant to a Final Order of the Bankruptcy Court, shall, unless the holder of such Allowed Administrative Expense Claim agrees to different treatment, receive Cash equal to the unpaid amount of such Allowed Administrative Expense Claim on the Effective Date, or as soon thereafter as practicable.

3.2    **Administrative Claims of Professionals.** All final requests for payment of administrative claims of professionals employed by the Debtor shall be paid in full in Cash on the Effective Date.  Debtor may continue to employ said professionals after the confirmation of this Plan and after the Effective Date and shall pay said professionals pursuant to the normal and customary billing practices of such professionals.

3.3    **Class 1 Allowed Secured Claims.**    Each holder of an Allowed Secured Claim shall, unless such holder shall otherwise agree, shall have the legal, equitable, and contractual rights to which such holder is entitled.  Debtor does not believe there are any claims within this class.

3.4    **Class 2 Allowed Unsecured Priority Claims.**    Each holder of an Allowed Unsecured Priority Claim shall, unless the holder of such Allowed Unsecured Priority Claim agrees to different treatment, receive Cash from the Debtor on the first business day following the thirtieth (30th) day after the Effective Date; or (b) the date said claim becomes an Allowed Claim.  Debtor does not believe there are any claims within this class.

3.5    **Class 3 Allowed General Unsecured Claims.**  Following payment in full of all Class 2 Allowed Unsecured Priority Claims, each holder of a Class 3 Allowed General Unsecured Claim shall receive a Cash Distribution from the Debtor in the amount of the Allowed General Unsecured Claim on the later of: (a) the first business day following the thirtieth (30th) day after the Effective Date; or (b) the date said claim becomes an Allowed Claim.

3.6    **Class 4 Allowed Claims of Holders of Lakeside 370 Levee District Improvement Bonds, Series 2008**.   The total amount of principal due on the Class 4 Lakeside 370 Levee District Improvement Bonds, Series 2008 is $33,640,000.00.

3.6.1 As of the Effective Date, all existing Lakeside 370 Levee District Improvement Bonds, Series 2008 shall be cancelled by the Paying Agent and in exchange therefor the holders on the Record Date of any Lakeside 370 Levee District Improvement Bonds, Series 2008 shall receive for each $1,000 in principal amount of bonds so held $420.00 of Series A Bonds issued by Lakeside 370 Levee District – Subdistrict A and $580.00 of Series B Bonds issued by Lakeside 370 Levee District – Subdistrict B.   There shall be no requirement to issue any Subdistrict Bonds in any increment less than $100.00, and pursuant to Section 5.12 hereof, there shall be no requirement that Debtor distribute any cash distribution less than $100.

3.6.2 The Subdistrict Bonds shall be issued pursuant to the terms of Trust Indentures each having an independent bond trustee who may but shall not be required to be the Paying Agent.  The form and substance of the Trust Indentures and the identity of the independent bond trustee shall be reasonably acceptable to the holders in majority in principal amount of the Lakeside 370 Levee District Improvement Bonds, Series 2008.

3.6.3 Provisions applicable to the Lakeside 370 District Subdistrict Series A Bonds and the Lakeside 370 Levee District Subdistrict Series B Bonds and repayment terms of the Subdistrict Bonds are as follows:

3.6.3.1 **Lakeside 370 Levee District Subdistrict A - Series A Bonds:** On or before the Effective Date of the Plan, the Lakeside 370 Levee District Subdistrict A shall assume and become obligated for $14,112,700.00 of the Lakeside 370 Levee District Improvement Bonds, Series 2008.  The Series A Bonds shall have a principal amount of up to $14,112,700.00.   Series A Bonds shall accrue interest at the rate of 5.75% per annum and shall pay interest only semi-annually in arrears for four (4) years from the Effective Date.  Commencing on the

fifth (5th) anniversary of the Effective Date, the Series A Bonds will be amortized over the remaining thirty-six (36) years to maturity and shall pay interest and principal semi-annually.   The Series A Bonds which comprise the Series A Bond Indebtedness shall retain all rights and privileges provided for in Chapters 245 and 246 R.S.Mo. including but not limited to, the tax lien provided for in R.S.Mo. 245.215 continuing to constitute a lien on all lands and other property against which the taxes have been or will be levied.

3.6.3.2  **Lakeside 370 Levee Subdistrict B - Series B Bonds:**  On or before the Effective Date of the Plan, the Lakeside 370 Levee District Subdistrict B shall assume and become obligated for $19,527,200.00 of the Lakeside 370 Levee District's Lakeside 370 Levee District Improvement Bonds, Series 2008.   The Series B Bonds shall have a principal amount of up to $19,527,200.00.   Series B Bonds shall accrue no interest, and shall be payable annually from:  (a) the net proceeds of the sale from time to time of District Owned Developable Acreage; (b) the District Assessments for bond debt repayment imposed upon District Owned Developable Acreage once such land is sold to a Person other than the District or Lakeside 370 Levee District – Subdistrict B; and (c) commencing on the fifth (5th) anniversary of the Effective Date, an additional annual payment of principal in the sum of One Hundred Dollars ($100.00).   In the case of (b), amortization of the Series B Bonds will begin on the April 1 following the date of sale.  Any principal remaining on said bonds at the expiration of forty (40) years from the Effective Date shall be forgiven.  The net proceeds of the sale from time to time of District Owned Developable Acreage shall be used to redeem Series B Bonds as soon as practicable.  The Series B Bonds which comprise the Series B Bond Indebtedness shall retain all rights and privileges provided for in Chapters 245 and 246 R.S.Mo. including but not limited to, the tax lien provided for in R.S.Mo. 245.215 continuing to constitute a lien on all lands and other property against which the taxes have been or will be levied.

3.6.4.   On or prior to the Effective Date the Lakeside 370 Levee District – Subdistrict Series A Bonds and the Lakeside 370 Levee District – Subdistrict Series B Bonds will be required to have been registered with the State Auditor of the State of Missouri and as a condition to the issuance of such bonds the State Auditor of the State of Missouri must have issued a certificate certifying that the proceedings relating to the issuance of such bonds to the effect that such proceedings comply with all conditions of the laws of the State of Missouri.

3.6.5   In connection with the issuance of the Lakeside 370 Levee District Subdistrict Series A Bonds, Debtor shall receive the legal opinion of nationally recognized bond counsel to the effect that the Lakeside 370 Levee District

Subdistrict Series A Bonds have been lawfully issued under Missouri law and that the Lakeside 370 Levee Subdistrict Series A Bonds bear interest exempt from federal and state (of Missouri) income tax under existing law.


## ARTICLE FOUR
## Impairment of Classes

4.1  **Impaired Classes.**  Classes 2, 3, and 4 are impaired as defined in Sections 901 and 1124 of the Bankruptcy Code.

4.2  **Unimpaired Classes.**  Class 1 is unimpaired as defined in Section 901 and 1124 of the Bankruptcy Code.


## ARTICLE FIVE
## Implementation of Plan

5.1  **Continued Existence of Debtor.**  The District shall remain in existence post-confirmation, shall maintain possession of the District Owned Acreage not transferred to the Lakeside 370 Levee District - Subdistrict A or to the Lakeside 370 Levee District - Subdistrict B pursuant to this Article 5, and shall continue its operations, as set out in its organizational documents, applicable state law, and the provisions of this Plan.  The District's operations shall continue to be managed by its Board of Supervisors.

5.2  **Creation of Subdistricts and transfer of District Land**.  Debtor filed Articles of Association for the creation of Lakeside 370 Levee District - Subdistrict A and Lakeside 370 Levee District – Subdistrict B and on November 6, 2014, the Circuit Court of St. Charles County entered its Judgment and Decree forming said Subdistricts.  Within sixty (60) days of the occurrence of the Effective Date:  (a) in consideration of Lakeside 370 Levee District – Subdistrict A's assumption of that portion of the bond debt described in Section 3.6 above, Debtor shall convey to Lakeside 370 Levee District -  Subdistrict A all District Land within said Subdistrict A  upon which a levee, seepage berm or other flood or drainage improvement has been constructed pursuant to the July 2006 Plan of Reclamation of the Lakeside 370 Levee District and will be operated in a manner consistent with the November 2014 Lakeside 370 Levee District – Subdistrict A Plan of Reclamation; and (b) in consideration of Lakeside 370 Levee District – Subdistrict B's assumption of that portion of the bond debt described in Section 3.6 above, Debtor shall convey to Lakeside 370 Levee District – Subdistrict B all District Land within said Subdistrict

11

B upon which a levee, seepage berm or other flood or drainage improvement has been constructed pursuant to the July 2006 Plan of Reclamation of the Lakeside 370 Levee District and will be operated in a manner consistent with the November 2014 Lakeside 370 Levee District – Subdistrict B Plan of Reclamation.

5.3    **Sale of District Owned Acreage**.    No later than sixty (60) days after the Effective Date, the Board of Supervisors shall retain a professional to market and sell the District Owned Developable Acreage from time to time whether in bulk or in separate parcels as deemed appropriate by the Board of Supervisors.  The Board of Supervisors shall exercise its best business judgment concerning the sale, lease, or other disposition of the District Owned Developable Acreage.

    5.3.1 If at any time the holders in majority in principal amount of the Lakeside 370 Levee District Bonds, Series 2008 or after the Effective Date of the majority in principal amount of the aggregate amount of the Series B Bonds so elect, said holders may appoint a bondholder representative (the "Bondholder Representative") who may attend meetings of the Board of Supervisors at which an offer to purchase all or a portion of the District Owned Developable Acreage is discussed and may participate in such discussions but shall not vote on any such proposition.  The Bondholder Representative, if elected, shall serve until such time as the Series B Bond Indebtedness is paid in full, refinanced, or the holders of the majority in principal amount of the aggregate amount of the Series B Bonds provide written notice to the Board of Supervisors of the termination of or replacement of the Bondholder Representative.

    5.3.2 Proceeds from any such sale of District Owned Developable Acreage shall be distributed in the following priority:  First, to payment of commissions and other expenses incurred in connection with said sale or lease, real estate taxes, and other customary closing costs; Second, to the extent deemed necessary by the Board of Supervisors of the District, to the replenishment of the Reserve for Maintenance Obligations; and Third, to the independent bond trustee to be used to partially redeem as soon as practicable the Lakeside 370 Levee District – Subdistrict B - Series B Bond Indebtedness. To the extent that any sale proceeds remain after retirement in full of the Lakeside 370 Levee District Subdistrict B - Series B Bond Indebtedness without interest thereon, any remaining proceeds shall be distributed to the Board of Supervisors for the payment of operation and maintenance expenses.

5.4    **Reduction of Delinquent Pre-Petition Assessments and Creation of Administrative Fund**.    Upon the occurrence of the Effective Date, all then delinquent District Assessments (whether for installment debt or for maintenance)

with respect to any District Land other than District Owned Acreage shall be reduced to the sum of $1,200,000.00 to be paid proportionally by the owners of such land who were delinquent in their District Assessments as of the Petition Date.    Debtor shall disburse the amount so collected in the following order of priority: (a) up to the sum of $200,000.00 shall be paid to counsel for the Debtor and the Bondholders for reasonable attorneys' fees and costs accruing from the Petition Date through the Effective Date; (b) the sum of $600,000.00 shall be used to fund the Reserve for Maintenance obligations; and (c) the balance to the independent bond trustee to be distributed pro-rata to the holders of the Lakeside 370 Levee District - Subdistrict A - Series A Bonds as satisfaction in full of interest due and owing on the Lakeside 370 Levee District Improvement Bonds Series 2008 as of the Effective Date.

5.5    **Post Effective Date Installment Assessments on District Owned Developable Acreage**.  In calendar year 2015, Lakeside 370 Levee District - Subdistrict B shall complete a readjustment of the assessment of benefits on all property within Subdistrict B such that all District Owned Acreage will have an assessed benefit for installment assessments equal to Fifty and no/100 ($50.00) Dollars per acre.   As District Owned Developable Acreage is sold pursuant to the provisions of Section 5.3 above, effective as of next October 1 following the date of closing of all or any portion of District Owned Developable Acreage, such land that is sold shall be subject to assessments for debt service on Lakeside 370 Levee District - Subdistrict B bonds at the same rate per acre as privately held Lakeside 370 Levee District – Subdistrict A District Land with respect to any such installment assessments.   The proceeds of such new Lakeside 370 Levee District - Subdistrict B Assessments for Debt Service on former District Owned Developable Acreage shall be used by the independent bond trustee to partially redeem the Lakeside 370 Levee District - Subdistrict B - Series B Bonds.

5.6   **Debt Service Payments**.  Interest payments on the Lakeside 370 Levee District – Subdistrict Series A Bonds shall be made semi-annually on April 1 and October 1. Principal payments on the Lakeside 370 Levee District – Subdistrict Series A Bonds shall be paid annually on April 1, beginning April 1, 2020.  Principal payments on the Lakeside 370 Levee District – Subdistrict B - Series B Bonds shall be made annually on April 1, beginning April 1, 2020 and principal of the Series B Bonds shall be redeemed as soon as practicable following the sale of District Owned Developable Acreage as set forth in Section 5.3.2 of this Plan.

5.7    **Bankruptcy Causes of Action.**    In accordance with sections 901 and 1123(b) of the Bankruptcy Code, the Debtor shall retain and may enforce all causes of action and  shall be vested with, and shall have the exclusive and sole right,

13

power, and authority to enforce, any and all rights, claims, choses in action, etc., whether existing on or after the Petition Date, including, but not limited to, any causes of action under sections 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code. The Debtor, in the exercise of its sole and absolute discretion, has determined not to prosecute and will not prosecute any such causes of action, except to the extent necessary to enforce collection of delinquent pre-petition assessments in accordance with Section 5.4 above, or as may be necessary or appropriate for Debtor's performance under this Plan.

5.8 **Landowner Right of Prepayment.** Notwithstanding any provision of this Plan to the contrary, any owner of District Land or any of the other Benefited Parties as of the Petition Date shall have the right to prepay all or any part of said Person's share of Lakeside 370 Levee District - Subdistrict A - Series A Bond Indebtedness based on said Person's proportion of the assessed benefit as determined by the Board of Supervisors of the Lakeside 370 Levee District - Subdistrict A in good faith. Notice of the right to prepay and the expiration thereof shall be provided by the Board of Supervisors of Lakeside 370 Levee District or the Board of Supervisors of the Lakeside 370 Levee District – Subdistrict A after the order of confirmation becomes a final order.

5.9 **Bankruptcy Case Administration.** From and after the Effective Date and continuing through the date on which a final decree closing the Chapter 9 Case is entered pursuant to Section 945 of the Bankruptcy Code, the Court shall retain jurisdiction to grant Debtor such relief as may be necessary or appropriate to the implementation of this Plan.

5.10 **Effectuating Documents and Further Transactions.** Debtor shall be and is authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

5.11 **Payments.** On the Effective Date, to the extent in Debtor's discretion the Debtor's funds so allow, the Debtor shall pay in full in Cash all Allowed Administrative Expense Claims. Thereafter, Debtor shall pay in full in Cash without interest (i) all Allowed Claims in Class 2; and (ii) all Allowed Claims in Class 3 on the latter of (a) the first business day following the thirtieth (30th) day after the Effective Date; or (b) the date said claim becomes an Allowed Claim.

14

5.12  **De Minimus Distributions.**  Neither the Debtor nor the Paying Agent shall be required to make any Distribution to or on account of any Allowed Claim where such Distribution would be less than $100.00.

5.13  **Unclaimed Property.**   The Debtor shall make Distributions to holders of Allowed Claims at those times and in the manner as set forth in the Plan and shall tender such Distributions to each such holder at the address of such holder as set forth in the List of Creditors Debtor filed with the Bankruptcy Court unless superseded by the address as set forth in said Creditor's Allowed Claim or in a notice provided on or before the Effective Date to the Debtor at the following address:

> Mr. Ryan Hodges, President
> Lakeside 370 Levee District
> 520 Maryville Centre Dr., Ste. 200
> St. Louis, MO 63141
>
> and to:
>
> Steven Goldstein
> Goldstein & Pressman, P.C.
> 10326 Old Olive Street Rd.
> St. Louis, MO 63141

In the event that any Distribution of property remains unclaimed for a period of six (6) months after it has been delivered (or after such delivery has been attempted) or otherwise made available in accordance with the Plan to the Creditor entitled thereto, such unclaimed property shall, on the next business day after such anniversary, be forfeited by such Creditor, whereupon all such unclaimed property shall, at the discretion of the Debtor, be deemed Cash and used as allowed in this Plan or deposited into the registry of the Bankruptcy Court.

5.14  **Authority of the Debtor Post-Confirmation.**   The Debtor shall have the authority set forth in this Plan. Debtor shall have the authority to retain such employees and professionals as may be reasonably necessary to carry out its obligations under the Plan and the Debtor is authorized and directed to reimburse, from its assets, any such employees and professionals for such professionals' reasonable fees and expenses in accordance with the Bankruptcy Code.   Debtor shall continue in possession of all of its property and assets and have the full authority to operate same to the fullest extent allowed under applicable law.

5.15  **Disputed Payments.**  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Debtor may, in lieu of making such Distribution to such holder, make such Distribution into an escrow account until the disposition thereof shall be determined by the Bankruptcy Court or by written agreement among the interested parties to such dispute.  Alternatively, Debtor may file an interpleader action in any court in the state of Missouri.  In the event that an interpleader action is filed, Debtor shall be entitled to be paid all of Debtor's attorneys' fees, costs, and expenses out of the disputed sum before any holder shall receive any payment from the interplead fund.

5.16  **Deadline for Filing Administrative Expense Claims.**  Requests for allowance and payment of Allowed Administrative Expense Claims must be filed with the Bankruptcy Court and served pursuant applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and local bankruptcy rules no later than thirty (30) days after the Effective Date.  Holders of such Claims who do not file a request for allowance and payment by such deadline shall be forever barred from asserting such Claims.

5.17  **Disputed Claims.**  Subject to further order of the Bankruptcy Court, from and after the Effective Date, the Debtor shall have the sole and exclusive right to make, file, litigate, and settle or otherwise dispose of any objections to Claims with the Bankruptcy Court, including, but not limited to, objections regarding the allowance, classification or amount of any Claim, and shall file such objections before the expiration of ninety (90) days after the Effective Date (the "Objection Deadline").  The Objection Deadline may be extended by the Bankruptcy Court on hearing and notice as the Bankruptcy Court deems just and proper.  No Distributions shall be made to the holder of a Disputed Claim until such time as said Disputed Claim shall become an Allowed Claim.  The Debtor shall not be required to establish a reserve or hold back any funds on account of Disputed Claims.  Nonetheless, the Debtor may establish such a reserve or hold back such funds as it deems prudent in its sole discretion, pending resolution of such Disputed Claims.  No objection is currently known to exist as to any Claims, whether or not filed as proofs of claims in this case, which constitute the Claims of holders of the bonds of the Lakeside 370 Levee District Improvement Bonds Series 2008

5.18  **Estimation of Claims.**  The Debtor may, at any time, request that the Bankruptcy Court estimate any Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether an objection has been filed with respect to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim.  In the event that the Bankruptcy Court estimates any Claim, the estimated amount may constitute

16

either an Allowed Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to payment of such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and are not exclusive.  On or after the Effective Date, Claims which have been estimated subsequently may be compromised, settled, withdrawn or otherwise resolved without further order of the Bankruptcy Court.

5.19  **No Recourse.**  Notwithstanding that the allowed amount of any particular Claim may be reconsidered under the applicable provisions of the Bankruptcy Code or allowed in an amount for which there is insufficient Cash to provide a recovery equal to that received by other holders of Allowed Claims in the relevant class, no such holder shall have recourse to the Debtor, to Lakeside 370 Levee District - Subdistrict A, to Lakeside 370 Levee District – Subdistrict B, or to any of their respective officers, board members, employees, professionals, members, or their successors or assigns, or the holder of any other Claim, or any of their respective property.  Nothing in the Plan, however, shall modify any right of a holder of a Claim under Section 502(j) of the Bankruptcy Code.

5.20  **Limitation of Liability.**

    5.20.1  The District, Lakeside 370 Levee District – Subdistrict A, Lakeside 370 Levee District – Subdistrict B, each member of their respective Boards of Supervisors and each and all of their respective officers and professionals are hereby exculpated by Debtor and by holders of Claims from any and all claims, causes of action and other assertions of liability (including breach of fiduciary duty) arising out of the discharge of the powers and duties conferred upon them by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of gross negligence or willful misconduct.  No current holder of a Claim or representative thereof, or other party in interest shall have or pursue any claim or cause of action against any of such parties, their employees, or any of their professionals for making payments or Distributions in accordance with the Plan.

    5.20.2  No holder of the Debtor's bonds that becomes a Bondholder Representative shall (a) be or become an insider, or fiduciary of the Debtor, or any affiliate of any Debtor, (b) be deemed to owe any duty to the Debtor, (c) undertake any duty to any party in interest, or (d) be deemed to misappropriate any information with respect to each of foregoing clauses (a) through (d), as a result of (x) participating in any conference of the board of the Debtor as a Bondholder

17

Representative, (y) being aware, or in possession of a proposal or counterproposal delivered or received by any party in interest or their agents or advisors in connection with a sale of the Debtor's Property, or (z) acting together in a group with other holders holding bonds of the Debtor.  Further, no party in interest in this bankruptcy case, including the Debtor or any successor to the Debtor, shall have any claim, defense, objection, or cause of action of any nature against the Bondholder Representative or any other basis to withhold, subordinate, disallow, or delay payment or issuance of any consideration to that Bondholder Representative based on a claim against such Bondholders for trading in Debtor's Series A Bonds, the bonds constituting the Series A Bond Indebtedness, the Series B Bonds, or the bonds constituting the Series B Bond Indebtedness by reason of the bondholder's participation as the Bondholder Representative to the Debtor's board.

## ARTICLE SIX
### Executory Contracts and Unexpired Leases

6.1    **Assumption and/or Rejection.**    All of Debtor's executory contracts and unexpired leases which have not specifically been assumed or rejected as of the Effective Date pursuant to Section 365 of the Bankruptcy Code shall be deemed to have been assumed on the Effective Date, no cure costs being due or paid.

6.2    **Claims Based on Rejection.**  To the extent any party has a Claim arising from the rejection of an executory contract or unexpired lease by operation of this Article Six and the Plan, such party shall have thirty (30) days from the Effective Date to file a proof of claim based on such rejection and such claim shall be classified as a Class 3 Claim for purposes of any Distribution under the Plan.  Any Claim with respect to a rejected contract or lease that is not filed within thirty (30) days of the Effective Date shall be forever barred.

## ARTICLE SEVEN
### Voting

7.1    **Eligibility.**    Holders of Allowed Claims in Classes 2, 3, and 4 may vote on the Plan.  Holders of Allowed Claims in Class 1 are conclusively deemed to have accepted the Plan pursuant to Sections 901 and 1126(f) of the Bankruptcy Code. Landowners within the District or any of the Benefitted Parties are not eligible to vote as said persons are not holders of Allowed Claims.

7.2    **Provisional Eligibility.**  Only the holder of an Allowed Claim is entitled to submit a ballot with respect to acceptance or rejection of the Plan. Notwithstanding the fact that an entity filed a proof of claim in the Case, if the

Debtor has filed an objection to such entity's proof of claim and such objection has not been resolved by a final order of the Bankruptcy Court by the deadline for submitting a ballot set out in the Disclosure Statement, such entity is not eligible to vote unless such entity obtains a Final Order of the Bankruptcy Court temporarily allowing its proof of claim for the purpose of accepting or rejecting the Plan in accordance with Rule 3018(a) of the Bankruptcy Rules.

## ARTICLE EIGHT
Releases

8.1   **Releases by the Debtor.**  As of the Effective Date of the Plan, the Debtor will be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights of the Debtor to enforce the Plan and the contracts, releases, indentures and other agreements or documents delivered thereunder) whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the parties released pursuant to this Article Eight of the Plan, the Chapter 9 proceedings, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtor against the current and former directors, officers, board members, and employees (in their capacities as such) of the Debtor, and the agents and professionals of the Debtor, including lawyers, staff and others employed by such agents and professionals.

## ARTICLE NINE
Effect of Confirmation

9.1   **Discharge.**  Debtor shall be discharged from all debts when: (a) this Plan is confirmed; (b) Debtor has made the payments due on the Effective Date; and (c) The Bankruptcy Court has determined that the obligations entered into by the Debtor in this Plan are valid obligations of the Debtor and that Debtor's obligations to fund the indebtedness under this Plan are valid.

9.2   **Binding Effect.**  From and the Effective Date, the provisions of this Plan shall bind the Debtor, each Creditor, each holder of a Claim that whether allowed or disallowed, each landowner within the boundaries of the District, each of the Benefitted Parties, and all of their respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

19

**ARTICLE TEN**
**General Provisions**

10.1  **Modification of Plan.**  The Debtor may, pursuant to Sections 942 and 1127 of the Bankruptcy Code, modify the Plan at any time prior to the entry of the Confirmation Order.  Any modification or amendment, which does not materially or adversely affect the interests of Persons affected by the Plan, can be made without having to solicit acceptance of such modification or amendment.  Further, the Debtor may take such steps as are necessary to carry out the purpose and effect of the Plan as modified or amended.

10.2  **Subdistrict Cooperation Agreement.**  To the extent consistent with and not otherwise provided within this Plan, the obligations, rights and responsibilities of the Debtor, Lakeside 370 Levee District - Subdistrict A, and Lakeside 370 Levee District - Subdistrict B under this Plan shall be carried out in accordance with the Subdistrict Cooperation Agreement.

10.3  **Closing of the Case**.  After the Estate of the Debtor has been fully administered, the Bankruptcy Court shall close the Case in accordance with Section 945 of the Bankruptcy Code.

10.4  **Further Actions.**  Pursuant to Sections 901 and 1142(b) of the Bankruptcy Code, the Confirmation Order shall operate as an order of the Bankruptcy Court directing the Debtor and any other necessary parties to execute and deliver, or join in the execution and delivery, of any instrument required to effect a transfer of any of Debtor's property, and to perform any other act that is necessary for the consummation of this Plan.

10.5  **Captions.**  Captions used in this Plan are for convenience only, and shall not affect the construction of the Plan.

10.6  **Disputed, Unliquidated and Contingent Claims.**  Notwithstanding any other term or condition of this Plan, disputed, unliquidated and contingent Claims shall be paid only upon allowance, in accordance with the provisions of Section 502 of the Bankruptcy Code.  The Debtor may, if it so elects, but without any obligation to do so, establish any reserve with respect to the disputed, unliquidated or contingent Claims.

10.7  **Jurisdiction of the Bankruptcy Court.**  After the entry of the Confirmation Order, the Bankruptcy Court will retain jurisdiction to the extent allowed and provided for under Section 945 of the Bankruptcy Code.

10.8  **Request for Confirmation.**  To the extent deemed necessary, Debtor hereby requests the Bankruptcy Court enter an Order confirming the Plan.

10.9  **Cram-Down.**  If any impaired class under the Plan, in accordance with Sections 901, 1126 and 1129(a)(8) of the Bankruptcy Code, fails to accept the Plan, Debtor reserves the right to request the Bankruptcy Court to confirm the Plan pursuant to Sections 901 and 1129(b) of the Bankruptcy Code and to automatically cause such modification of the Plan as is necessary to enable the Plan to provide treatment of claims to satisfy the requirements of Section 1129(b) of the Bankruptcy Code as said section is incorporated by Section 901 of the Bankruptcy Code.

10.10  **Disclosure Statement.**  In making a decision to vote for or against this Plan, holders of Claims should refer to the Disclosure Statement approved by the Bankruptcy Court for additional information relating to the Debtor and the Plan. Said Disclosure Statement is incorporated herein by this reference.

10.11  **Notice.**  Any notices required or permitted to be provided under or in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid; (ii) hand delivery; or (iii) reputable overnight delivery service, all charges prepaid, and shall not be deemed to have been given until received by:

> If to Debtor:  Steven Goldstein, Esq.
> Goldstein & Pressman, P.C.
> 10326 Old Olive Street Rd.
> St. Louis, MO 63141-5922

21

10.12 **Interpretation.** To the extent of any conflict in terms between or among the Disclosure Statement, the Subdistrict Cooperation Agreement and this Plan, the terms of this Plan shall be controlling.

**LAKESIDE 370 LEVEE DISTRICT,**
**a political subdivision of the State of Missouri**

By: /s/ Ryan Hodges, President

## GOLDSTEIN & PRESSMAN, P.C.

By:  /s/ Steven Goldstein

Steven Goldstein (ARN 32790, MBE 24807)
Robert A. Breidenbach (ARN 74339, MBE 41557)
10326 Old Olive Street Road
St. Louis, MO 63141-5922
FAX: (314) 727-1447
VOICE: (314) 727-1717
sg@goldsteinpressman.com

Attorneys for Debtor