UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | In Proceedings Under Chapter 9 |
| | ) | Hon. Kathy A. Surratt-States |
| LAKESIDE 370 LEVEE DISTRICT | ) | |
| | ) | |
| | ) | Case No.   14-46094-659 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |

_____

**DISCLOSURE STATEMENT - LAKESIDE 370 LEVEE DISTRICT**
**(Dated December 15, 2014)**
_____

## I.   INTRODUCTION

Lakeside 370 Levee District, the Debtor in the above-captioned proceedings under Chapter 9 of Title 11 of the United States Code, (hereinafter, the "Debtor" and the "Plan Proponent"), provides this Disclosure Statement (the "Disclosure Statement") to all of Debtor's known Creditors and parties who have entered an appearance in this bankruptcy proceeding, to disclose information deemed to be material for such persons to be reasonably informed when voting to accept or reject the Plan of Adjustment - Lakeside 370 Levee District Dated December --, 2014 proposed by Debtor (hereinafter, the "Plan"), a copy of which is attached hereto as Exhibit A.

In connection with this Disclosure Statement and the Plan, the Plan Proponent solicits and encourages acceptance of the Plan.   Except as hereinafter provided, capitalized terms used herein have the meanings given them in the Plan.

The Court will set a hearing on Acceptance and Confirmation of the Plan, and prior thereto the Creditors may vote.   As a Creditor, your acceptance is important.   For the Plan to be accepted, of the Creditors who vote, at least two-thirds (⅔) in amount and more than one-half (½) in number of the Allowed Claims of each impaired Class of Creditors must accept the Plan.   If the plan is not approved by the requisite votes, the Court may nonetheless confirm the Plan if the Court finds that the Plan does not

discriminate unfairly, and is fair and equitable with respect to each such nonaccepting Class.

## II. DISCLAIMERS

**THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN DETERMINING HOW TO VOTE ON THE PLAN. CAPITALIZED TERMS HEREIN SHALL HAVE THE SAME MEANING AS SET OUT IN THE PLAN.**

**NOTHING HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, NOR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, NOR BE DEEMED CONCLUSIVE ADVICE ON THE LEGAL EFFECTS OF THE LIQUIDATION OF THE DEBTOR.**

**EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATION CONCERNING THE DEBTOR OR THE VALUE OF ITS ASSETS IS AUTHORIZED BY THE COURT.**

**COURT APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT OF THE PLAN OR A GUARANTY OF THE ACCURACY OF INFORMATION CONTAINED HEREIN.**

**YOU SHOULD NOT RELY UPON ANY REPRESENTATIONS OR INDUCEMENTS MADE TO AFFECT YOUR VOTE THAT ARE NOT CONTAINED HEREIN.**

**UNLESS ANOTHER TIME IS SPECIFIED, ALL STATEMENTS ARE MADE AS OF THE DATE HEREOF.**

**THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED HEREIN. THE DEBTOR IS UNABLE TO AND DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION IS WITHOUT ANY INACCURACY.**

**BE AWARE THAT THE DEBTOR WANTS THE PLAN TO SUCCEED. THE STATEMENTS MADE HEREIN, ALTHOUGH GENUINE IN BELIEF, MAY BE AFFECTED BY THIS INTEREST.**

**EACH PERSON ENTITLED TO VOTE ON THE PLAN IS STRONGLY URGED TO CONSULT WITH HIS FINANCIAL ADVISOR AND LEGAL COUNSEL BEFORE VOTING ON THE PLAN.**

### III. VOTING INFORMATION

**THE COURT HAS SET THE HEARING ON ACCEPTANCE OF THE PLAN FOR _____, 201\_ AT _____M. ST. LOUIS TIME. CREDITORS MAY VOTE ON THE PLAN BY COMPLETING THE ENCLOSED BALLOT AND MAILING IT TO COUNSEL FOR THE DEBTOR:**

      **STEVEN GOLDSTEIN, ESQ.**
      **GOLDSTEIN & PRESSMAN, P.C.**
      **10326 OLD OLIVE STREET ROAD**
      **ST. LOUIS, MO   63141-5922.**

**ALL BALLOTS MUST BE RECEIVED BY COUNSEL FOR THE DEBTOR ON OR BEFORE 4:30 P.M. CDT ON _____, 201\_**

### IV. THE DEBTOR AND ITS HISTORY

A.    Formation, Prior Operating History, and Events Leading to Bankruptcy

On or about April 28, 2006 the owners of a majority of certain acreage comprising approximately 1,270 acres located within St. Charles County, State of Missouri executed the Articles of Association and Petition to Declare Levee District of The Lakeside 370 Levee District (the "Articles and Petition") by which said parties sought to create a levee district pursuant to the provisions of Section 245.100 through 245.280 of the Revised Statutes of the State of Missouri (2000).  On or about May 22, 2006 the Circuit Court of St. Charles County entered its Judgment and Decree thus duly establishing and creating the Lakeside 370 Levee District.  A true and correct copy of said judgment, including a legal description of the boundary lines of the district is attached hereto as Exhibit A and is incorporated herein.  Of the approx. 1,270 acres that comprise the District, approximately 850 acres consist of internal roads and developable land.  Plans for development of the District included the construction of office/warehouses, offices, manufacturing/distribution facilities, dining/entertainment properties, retail, hotel/conference facilities, and cultural and recreational facilities.

The Debtor is governed by a Board of Supervisors consisting of five (5) members elected by owners of real estate within the District. At least two (2) of the members of the Board of Supervisors must be residents of the county in which the District is located or an adjoining county.   Members of the Board of Supervisors serve

staggered terms and are elected by landowners at an annual meeting of the Board of Supervisors.

Debtor funded improvements to the land within the District through the issuance of certain Levee District Improvement Bonds in the principal sum of $33,895,000.00 (the "Bonds").  In order to pay the principal and interest due under the Bonds Debtor levied assessments on the owners of land within the District (the "Benefitted Parcels").  These assessments, made pursuant to Chapter 245 of the Revised Statutes of Missouri, have been and continue to be the sole source of revenue for the Debtor and the means for repayment of the Debtor's obligations under the Bonds.  Except as affected by Debtor's adjustment proceeding, these assessments are collected by the Collector of Revenue for St. Charles County and remitted to Debtor with unpaid assessments constituting a lien on the Benefitted Parcels.

At the time of the issuance of the Bonds, approximately 400 acres of land in the District, representing approximately 53% of the assessments used to fund payments on the Bonds, were owned by an entity seeking to develop said land. Shortly after the formation of District, however, real estate values and development activity fell precipitously nationwide and within the District.  As a result, the owner of the aforementioned 400 acres became delinquent in its payment of assessments to the District and the Debtor enforced its assessment lien and acquired said real estate at a public sale held in 2012.  Following said sale, the Debtor became the largest landowner in the District.  In order to attempt to generate the funds necessary for continued debt service on the Bonds the District was forced to increase its assessments among the remaining 47% of the assessment-paying owners, effectively doubling their assessments.  Many landowners were unable to or unwilling to tender the increased assessments and Debtor was unable to make payments on the Bonds

Debtor attempted to meet with the two institutions owning or controlling over 80% of its outstanding Bonds.  Only the holder of over 60% of Debtor's outstanding Bonds choose to participate.  These parties engaged in extensive meetings, telephonic and electronic mail discussions in an attempt to reach an agreement on the restructuring of its financial affairs and mutually came to the conclusion that the most likely vehicle for completing such a restructuring is the commencement of a case under Chapter 9 of Title 11 of the United States Code and the confirmation of a Plan of Adjustment. On August 1, 2014 Debtor filed its Voluntary Petition for relief under Chapter 9 of Title 11 of the United States Code.  On August 4, 2014 the Hon. Kathy A. Surratt-States was appointed to preside over this case.

4

**B.     Summary of Significant Events in Bankruptcy.**

A proceeding under Chapter 9 of the Bankruptcy Code involves the adjustment of debts of a municipality, a political subdivision of a state, or an instrumentality or agency of a state. The Debtor is a creation of state law and is a political subdivision of the State of Missouri. In a Chapter 9 proceeding the involvement of the court, the Office of the United States Trustee, and the creditors is significantly limited when compared to cases under the other chapters of the Bankruptcy Code and a Debtor under Chapter 9 is afforded a significant amount of liberty in the conduct of its affairs while in bankruptcy.

In an effort to limit costs and to promote a prompt resolution of its case, Debtor has refrained from instituting significant proceedings in the case, but did file a motion to enforce the provisions of the automatic stay with respect to the collection efforts of the Collector of Revenue of St. Charles County to prevent the Collector from foreclosing on certain tax liens and to require the Collector to apply payments tendered by owners of Benefitted Parcels toward real estate tax obligations, so that Debtor could address the issue of unpaid assessments in its Plan. The motion was supported by one of Debtor's largest creditors and was approved by the Bankruptcy Court on August 12, 2014.

## V.   SUMMARY OF THE PLAN

The following is a brief description of the anticipated claims and distributions under the Plan.

**Allowed Administrative Expense Claims:** Each holder of an Allowed Administrative Expense Claim, if not previously paid in full pursuant to a Final Order of the Bankruptcy Court, shall, unless the holder of such Allowed Administrative Expense Claim agrees to different treatment, receive Cash equal to the unpaid amount of such Allowed Administrative Expense Claim upon the later of (i) the Effective Date or (ii) the first business day after a Final Order is entered regarding such Allowed Administrative Expense Claim. Such claims will generally consist of legal and professional fees of counsel for the Debtor and other professionals of the Debtor, whose compensation will be disclosed and found reasonable as described in 11 U.S.C. §943(a)(3).

**Class 1 Allowed Secured Claims:** The Debtor is not aware of the existence of any creditor holding a lien or security interest in any assets of the Debtor. To the extent

5

any Allowed Secured Claims exist, creditors holding said claims will retain their liens and their legal, equitable and contractual rights will be unaffected by the Plan.

**Class 2 Allowed Unsecured Priority Claims:** Debtor is not aware of the existence of any unsecured priority claims. To the extent that any Allowed Unsecured Claims exist, each holder of an Allowed Unsecured Priority Claim shall, unless the holder of such Allowed Unsecured Priority Claim agrees to different treatment, receive Cash from the Debtor on the later of (i) the first business day that is thirty (30) days after the Effective Date or (ii) the first business day after a Final Order is entered allowing such claim. Allowed Claims in Class 2 shall not receive interest on said claims. Debtor does not believe there are any claims in this class.

**Class 3 Allowed General Unsecured Claims:** After full payment of all Allowed Unsecured Priority Claims in Class 2, each holder of an Allowed General Unsecured Claim shall receive Cash from the Debtor in the amount of the Allowed General Unsecured Claim on the later of (a) the first business day that is thirty (30) days after the Effective Date; or (b) the date that said Claim shall become an Allowed Claim.

**Class 4 Allowed Claims of Holders of Lakeside 370 Levee District Improvement Bond Series 2008:** The total principal amount due to the holders of Allowed Claims in Class 4 is $33,640,000.00. The indebtedness on said bonds will be refinanced through the creation of two (2) Subdistricts: (i) Lakeside 370 Levee District – Subdistrict A; and (ii) Lakeside 370 Levee District – Subdistrict B. Each such Subdistrict which will assume a portion of the indebtedness due under the Bonds on the terms and conditions set out in the Plan. The assumed indebtedness will be paid from Debtor's post-confirmation assessment revenues and the proceeds received from sale of District Owned Acreage.

### VI. MEANS FOR EXECUTION OF THE PLAN

Debtor shall remain in existence after confirmation and will retain ownership of the District Owned Acreage to the extent such property is not transferred under the provisions of Article Five of the Plan. Debtor will continue its operations as set out in its organizational documents, applicable state law, and the Plan and will continue to be managed by its Board of Supervisors.

**Formation of Subdistricts:** Pursuant to proceedings initiated by Debtor in the Circuit Court of St. Charles County, by Judgment and Decree entered on November 6, 2014, two (2) subdistricts were created: (i) Lakeside 370 Levee District – Subdistrict A; and (ii) Lakeside 370 Levee District – Subdistrict B. Those proceedings are designated as 1411-CC00998 and 1411-CC00999 respectively. Debtor and each of

the Subdistricts have or will enter into a Subdistrict Cooperation Agreement (the "Cooperation Agreement") which will define their relationship and operations.

**Refinancing of Bond Debt:** The Plan provides that on or after the Effective Date all existing Bonds of the Debtor will be cancelled and in exchange therefor the holders on the Record Date of any Lakeside 370 Levee District Improvement Bond, Series 2008 bond shall receive for each $1,000.00 in principal amount of bonds so held $420.00 in Series A Bond Indebtedness issued by Lakeside 370 Levee District – Subdistrict A and $580.00 in Series B Bond Indebtedness issued by Lakeside 370 Levee District – Subdistrict B.  No bonds issued by the Subdistricts shall be issued in an increment less than $100.00, nor shall any cash distribution be made in an amount less than $100.  As a condition to issuance, all Series A Bonds and Series B Bonds will be registered with the State Auditor of the State of Missouri.

**Conveyance of Land and Assumption of Debt:**   The Plan provides that within sixty (60) days of the Effective Date, Debtor will convey to Lakeside 370 Levee District – Subdistrict A all District Land within said Subdistrict that has been identified as an integral part of the levee system, namely that upon which a levee, seepage berm or other flood or drainage improvement has been constructed pursuant to the July 2006 Plan of Reclamation of the Lakeside 370 Levee District.  In consideration for said conveyance, Lakeside 370 Levee District – Subdistrict A will assume $14,112,700.00 of the Bonds and issue Series A Bonds in exchange for a portion of the outstanding Bonds of the District.  Such Series A Bond Indebtedness will accrue interest at the rate of 5.75% per annum and will be paid in semi-annual installments of interest only in arrears for four (4) years from the Effective Date.  Commencing on the fifth (5th) anniversary of the Effective Date, the Series A Bond Indebtedness will be amortized over the remaining thirty-six (36) years to maturity and shall pay interest and Principal semi-annually.

The Plan provides that within sixty (60) days of the Effective Date, Debtor will convey to Lakeside 370 Levee District – Subdistrict B all District Land within said Subdistrict that has been identified as an integral part of the levee system, namely that upon which a levee, seepage berm or other flood or drainage improvement has been constructed pursuant to the July 2006 Plan of Reclamation of the Lakeside 370 Levee District.  In consideration for said conveyance, Lakeside 370 Levee District – Subdistrict B will assume $19,527,200.00 of the Bonds and issue Series B Bonds in exchange for a portion of the outstanding Bonds of the District.  Such Series B Bond Indebtedness will accrue no interest and shall be paid in annual installments from (a) the net proceeds of the sale, from time to time, of District Owned Developable Acreage; (b) District Assessments for bond debt repayment imposed upon District Owned Developable Acreage once such land is sold to a Person other than Lakeside 370 Levee District or Lakeside 370 Levee District – Subdistrict B; and (c)

7

commencing on the fifth (5th) anniversary of the Effective Date, an additional annual payment of principal in the sum of One Hundred Dollars ($100.00). Any principal remaining unpaid of the Series B Bonds at the expiration of forty (40) years from the Effective Date shall be forgiven.

**Sale of Land:** The Plan provides that the Board of Supervisors will retain one or more professionals to market and sell District Owned Developable Acreage upon terms and conditions as the Board of Supervisors deems appropriate in the exercise of the best business judgment of the Board of Supervisors. Section 5.3.1 of the Plan provides that should a majority in principal amount of the aggregate amount of the Series B Bonds so elect, said bondholders may appoint a Bondholder Representative to participate in discussion but shall not vote on any and all discussions concerning the sale of real estate. Proceeds of sales of such real estate shall be paid in the following order: (a) payment of sales commissions, and other customary costs or expenses of sale; (b) to the extent deemed necessary by the Board of Supervisors payment in such amounts to replenish the Debtor's Reserve for Maintenance Obligations; and (c) to the Paying Agent to partially redeem the Series B Bond Indebtedness.

**Assessments:** District Owned Acreage shall remain exempt from District Assessments for installment obligations, but shall at all times be responsible for maintenance obligations. As and after District Owned Developable Acreage is sold, it will be subject to installment assessments and, effective the next succeeding October 1 following the date of closing of such sale or sales, such land will be subject to assessments for debt service at the same rate as privately held District Land. In 2015 Lakeside 370 Levee District – Subdistrict B will conduct a reassessment of benefits on property within said Subdistrict and shall reassess or readjust for any District Owned Developable Acreage after each sale as set out in the preceding paragraph and section 5.5 of the Plan.

**Partial Release of Delinquent Assessments:** Upon the Effective Date, all then delinquent District Assessments (whether for installment debt or for maintenance) will have their delinquency reduced to their pro-rata share of the reduced aggregate assessment of $1,200,000.00 to be paid proportionally by the owners of such land who were delinquent in their District Assessments as of the Petition Date. Funds collected from the payment of the reduced assessments set out herein shall be used to make the following payments: (a) up to $200,000.00 to counsel for the Debtor and counsel for Bondholders from the Petition Date through the Effective Date; (b) up to $600,000.00 to fund a Reserve for Maintenance Obligations; and (c) the balance will be paid to the Paying Agent as satisfaction in full of interest due and owing on the Lakeside 370 Levee District Improvement Bond, Series 2008 as of the Effective Date.

8

## VII. SUMMARY OF OTHER PROVISIONS OF THE PLAN

A. **Objections to Claims**.

Debtor will have the exclusive right, power, and authority to make, file, litigate, settle, or otherwise dispose of any objection to Claims. Absent further order of the Bankruptcy Court, all such objections must be filed within ninety (90) days of the Effective Date. Debtor shall make no distribution to any Disputed Claim unless and until it shall become an Allowed Claim. Debtor has agreed not to object to the claims of bondholders, provided that such claim is consistent with the records of the Paying Agent on the Record Date and the sum of all such claims does not exceed $33,640,000 in the aggregate.

B. **Treatment of Executory Contracts and Unexpired Leases**.

The Plan provides that all of Debtor's executory contracts and unexpired leases as of the Petition Date, which have not been specifically assumed or rejected pursuant to Section 365 of the Bankruptcy Code shall be deemed assumed with no cure costs being due or payable on the Effective Date.

C. **Effect of Confirmation**.

Confirmation of the Plan and the Confirmation Order will authorize the distributions, transactions, and procedures outlined herein and set forth in the Plan. The provisions of the confirmed Plan will bind the Debtor and all creditors, whether or not the creditor filed a proof of claim, whether or not such creditor's proof of claim has been allowed, and whether or not the creditor accepted the Plan. Confirmation of the Plan will discharge the Debtor from all debts as provided in 11 U.S.C. §944. Debtor may modify the Plan at any time prior to entry of the Confirmation Order as provided in 11 U.S.C. §942. After entry of the Confirmation Order, Debtor may, with approval of the Bankruptcy Court, modify or amend the Plan in a manner which does not materially, adversely affect the interests of persons affected by the Plan without having to solicit acceptance of such modifications, and may take such steps as are necessary to carry out the purpose and effect of the Plan as modified.

After the administration of Debtor's case has been completed, the Bankruptcy Court shall close the case.

The Confirmation Order shall operate as an Order of the Bankruptcy Court directing the Debtor and any other necessary party to execute and deliver, or join in the execution and delivery, of any instrument required to effect the transfer of any

property to be transferred under the Plan, and to perform any other act that is necessary for the consummation of the Plan.

Notwithstanding any other term or condition of the Plan, disputed, liquidated and contingent claims shall be paid only upon allowance, in accordance with the Bankruptcy Code.

If any impaired Class under the Plan fails to accept the Plan, Debtor reserves the right to request the Bankruptcy Court to confirm the Plan and to automatically cause such modification of the Plan, if any, so as to enable the Plan to provide treatment of claims to satisfy the requirements of the Bankruptcy Code.

The Plan sets forth the only matters over which the Bankruptcy Court shall retain jurisdiction after the Confirmation Date and after the Effective Date.

**The Post-Confirmation Debtor.**

This Plan contemplates that Debtor shall remain in operation and possession of its assets post-confirmation so that Debtor may perform its obligations under the Plan. The post-confirmation management of the Debtor will be maintained in the Board of Supervisors. The current members of the Board of Supervisors, who hold the same offices in each of the two (2) subdistricts described herein and in the Plan, and who shall receive no compensation for their service, are the following and said members will constitute the Board of Supervisors after confirmation:

| Name | Office |
|---|---|
| Ryan Hodges | President |
| Bill Charinsky | Secretary/Treasurer |
| Thomas R. Martin | Supervisor |
| Mike Gansen | Supervisor |
| Kris Weidenbenner | Supervisor |

The Board of Supervisors will inform and communicate on a regular basis with a Bondholder Representative who may be elected by the holder of a majority in principal amount of the Lakeside 370 Levee District Improvement Bonds, Series 2008. The Bond Representative, if elected, shall serve until such time as the Series B Bond Indebtedness is paid in full, refinanced, or the holders of a majority in principal amount of the Lakeside 370 Levee District Improvement Bonds, Series 2008 provide written

10

notice to the Board of Supervisors of the termination of or replacement of the Bondholder Representative.

## VIII. LIQUIDATION ANALYSIS

Debtor's Plan of Adjustment does not envision the liquidation of Debtor's assets other than the sale of District Owned Developable Acreage in the ordinary course of business and the criteria for confirmation of a Chapter 9 Plan of Adjustment does not require consideration of the liquidation value of a Debtor's assets.  As such, Debtor does not provide a liquidation analysis with respect to the Plan.

## IX. PROCEDURE FOR CONFIRMATION

At the hearing on confirmation of the Plan, the Bankruptcy Court will confirm the Plan only if the applicable requirements of the Bankruptcy Code have been satisfied.

A.  **Acceptance by Classes**.

At the hearing on the Confirmation of the Plan, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by the requisite amount and number of Allowed Claims in each impaired Class.  Under the Bankruptcy Code, a class of creditors is impaired if its legal, equitable or contractual rights are altered by a proposed Plan.

If a Class is not impaired, each creditor in such unimpaired class is conclusively presumed to have accepted the Plan.  If a Class is impaired, then each member in said class holding an Allowed Claim may vote on the Plan

Classes 2, 3, and 4 are impaired under the Plan and, therefore, are entitled to vote on the Plan.  The holders of Allowed Claims in said classes are entitled to vote for or against the Plan by completing the ballot mailed to them with this Disclosure Statement and returning it to the Debtor's counsel within the time required.

Class 1, is unimpaired under the Plan and is conclusively presumed to have accepted the Plan and therefore holders of Allowed Claims in Class 1 are not entitled to vote on Debtor's Plan.

11

B.  **Disputed Claims Not Eligible to Vote**.

Each entity which holds a claim with respect to which an objection has been filed with the Bankruptcy Court, is not eligible to vote unless such entity files a proper pleading with the Bankruptcy Court pursuant to Rule 3018(a) of the Bankruptcy Rules and obtains a Final Order temporarily allowing its claim for the limited purpose of accepting or rejecting the Plan.

C.  **Requisite Approvals**.

Under the Bankruptcy Code, an impaired Class of Creditors and each holder of a claim in such Class will be deemed to have accepted the Plan if the holders of at least two-thirds (⅔) in amount and more than one-half (½) in number of the Allowed Claims in such impaired Class for which completed ballots have been received have voted for acceptance of the Plan.

Even if classes entitled to vote do not accept the Plan, Debtor intends to request that the Bankruptcy Court confirm the Plan.  To so confirm the Plan the Bankruptcy Court must determine, among other things, that the Plan does not discriminate unfairly and that it is fair and equitable with respect to each Class of impaired Allowed Claims that have not voted to accept the Plan.

D.  **Risk Factors**.

While the Plan Proponent believes the Plan is confirmable and that the Debtor will be able to perform its obligations under the Plan, there are risks to consider, including: (a) there is a risk that Debtor will be unable to sell District Owned Acreage in sufficient amounts to retire the bonds issued by Lakeside 370 Levee District - Subdistrict B; (b) there is a risk that assessments on former District Owned Acreage after sale will not be sufficient to retire the bonds issued by Lakeside 370 Levee District - Subdistrict B; (c) there is a risk that some land owners will fail to pay assessments and that assessments will have to be increased on other landowners to cover the payments due under bonds issued pursuant to the Plan; (d) there is a risk that owners of District Land will not be able to pay assessments or real estate taxes and that the tax/assessment base of the District will be reduced to a level that Debtor cannot fund the obligations set out in the Plan; and (e) there is a risk that the issuance of a decree forming the subdistricts will not be delayed or appealed and that the payments due and the transactions envisioned under the Plan will be likewise delayed.

12

E.  **Hearing on Confirmation of the Plan**.

Debtor will request that the Court set a date in St. Louis, Missouri for the hearing to determine whether the Plan has been accepted by the requisite number of creditors, and whether the Plan satisfies the requirements of the Bankruptcy Code.  The hearing may be adjourned from time to time without further written notice.  Debtor will provide all creditors and parties in interest notice of the hearing on confirmation of the Plan, along with a copy of the Plan and this Disclosure Statement.

F.  **Acceptance**.

Each impaired class must accept the Plan by the percentages described above, or the Court must find that the Plan complies with the "fair and equitable" test described below, with respect to any such non-accepting class.

G.  **Fair and Equitable Test**.

If less than all the impaired classes accept the Plan, the Plan may nevertheless be confirmed by the Court provided that one impaired Class has affirmatively voted to accept the Plan.  In order to obtain confirmation over the objection of a non-accepting class, the Debtor must only demonstrate to the Court that as to each non-accepting impaired class, the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to that class.  A plan does not discriminate unfairly if no class receives more than it is entitled to for its claim.  The Code establishes different "fair and equitable tests" for Secured Creditors and Unsecured Creditors as follows:

    1.  **Secured Creditors**.

An impaired class of Secured Creditors must retain the liens securing their claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims and each holder of a claim in such class receives on account of such claim, deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the Effective Date, of at least the value of such holder's interest in the estate's interest in such property. Debtor believes that there are no holders of Allowed Secured Claims in Class 1 of the Plan and that, even if there are, the Plan provides that said creditors retain their liens and are not impaired.

    2.  **Unsecured Creditors**.

The "fair and equitable" test for Unsecured Creditors requires that (a) an impaired class of Unsecured Creditors must receive or retain under the Plan property of a value at least equal to the amount of the allowed claims; or (b) the holders of claims or

13

interests junior to the claims of the dissenting class of Unsecured Creditors will not receive any property under the Plan.  The Plan Proponents submit that the Plan satisfies this criteria by providing that, as to the Class 2 Allowed Unsecured Priority Claims and the Class 3 Allowed General Unsecured Creditors, said creditors will be paid in full and no creditor of lower priority will receive payment until said claims are paid in full.  As to the Class 4 Allowed Claims of Holders of Lakeside 370 Levee District Improvement Bond Series 2008 no holder of a claim or interest junior to said claims will receive any payment or property on account of such claim or interest until said claims are paid in full.

## X.  CONCLUSION

      Debtor believes that acceptance and confirmation of the Plan is in the best interest of creditors, is feasible, and urges the holders of Allowed Claims voting on the Plan to vote to accept the Plan.

      Dated at St. Louis this 15th day of December, 2014.

**LAKESIDE 370 LEVEE DISTRICT**

By:    /s/ Ryan Hodges, President

Ryan Hodges, President

14